### CHRISTIAN v. AMERICAN DRUGGIST SYNDICATE.

(Circuit Court of Appeals, Second Circuit. November 6, 1922.)

#### No. 18.

**Principal and agent** ⟳177(6)—**Knowledge of agent imputable to principal.**

Where an employee of defendant in the course of his employment, in preparing copy for advertisements, borrowed a chart from complainant, which he took from a book copyrighted by complainant, his knowledge of the copyright was imputable to defendant, whether or not he in fact disclosed it, and rendered defendant liable for infringement for printing the chart in its advertising.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by Eugene Christian against the American Druggist Syndicate. Decree for complainant, and defendant appeals. Affirmed.

Tomlinson, Coxe & Tomlinson, of New York City (Lucius E. Varney, of New York City, of counsel), for appellant.

Epstein & Brothers, of New York City, for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This case is brought for an alleged infringement of a copyright, and the court below awarded an injunction and assessed the damages in the amount of $1,000. The plaintiff is a practitioner of dietetics and is the author of various writings upon that subject. He owns the copyright of the Encyclopædia of Diet, a treatise on the food question, in five volumes. The purpose of the work is to set forth the science of human nutrition, and the proper combination of foods and the selection of foods, as opposed to medi-

cine for the treatment of stomach disorders. It is alleged that 30,000 sets of the copyrighted work have been published and sold; more copies having been sold to laymen than to physicians.

The defendant is a corporation which manufactures and distributes medicines, pharmaceuticals, and toilet articles. It employed in its business one William G. Adams as one of its advertising men, who was at the same time an assistant of the president. It appears that Adams was a friend of the plaintiff, and called upon him at his house some time in January, 1917; he being at the time employed by the defendant. At the time of this call Adams was preparing material on A. D. S. Milk of Magnesia to be used in connection with the advertising work of the defendant. He knew that his friend, the plaintiff, was a specialist on stomach trouble and thought he might obtain some help from him as to the matter upon which he was at work for the defendant, and so he called upon and discussed with him the question of superacidity for which the milk of magnesia was advised, and questioned him as to the causes and effects and possible cures of the difficulty mentioned. The plaintiff showed him the set of books he had published on dietetics, and called his attention to a chart in one of the volumes, which showed a list of causes and effects.

Adams was much impressed by the chart, and asked the plaintiff for permission to take it with him that he might correctly inform himself in reference to the facts that he put into the advertising matter he was engaged in preparing. The plaintiff knew that Adams was employed by the American Druggist Syndicate, and Adams told him that he was preparing some advertising and did not want to make any misstatements, because that would reflect upon the drug companies. He read to the plaintiff some of the copy he had already prepared, and the plaintiff pointed out to him certain misstatements which it contained. The plaintiff at this interview agreed that Adams might remove the chart from the book, and might take both the book and the chart away with him. This he did, and at a subsequent conference with some of the officials of the defendant, Adams, according to his own testimony, showed them the chart. One of the defendant's officials stated "that it would make a bully good poster to feature the American Druggist Syndicate milk of magnesia. And Adams then informed some of defendant's officials very positively that they could not make any such use of it, as it was a part of a copyrighted book, and that, moreover, it would not be fair to the plaintiff, who had loaned it to him as a personal favor.

It seems, however, that Adams kept the chart in his files, and left it there when he left the defendant's employ; and some time thereafter the defendant reproduced the chart in its advertising matter, making several thousand copies of it, which it distributed among druggists as an advertisement for a certain patent medicine. The defendant also reproduced the chart in the March, 1918, issue of The Voice, one of its publications, of which 20,000 copies were printed and distributed. The plaintiff alleges that these publications infringed its copyright, and there is no doubt that they did, if at the time of publication the defendant had knowledge of the fact that the chart

had been copyrighted. It is admitted that there was nothing on the face of the plaintiff's chart to show that it was copyrighted, and the defendant in its answer had admitted that it had published and circulated the chart as charged, but denied that in doing so it had any knowledge of the plaintiff's copyright, and the case turns upon the question whether it in fact had, or must be held to have had, such knowledge.

That Adams himself had such knowledge is admitted by him, as we have seen. But that he ever imparted that information to the defendant is denied, and the testimony on that subject is conflicting. We are inclined to the opinion that Adams could not very well be mistaken as to the fact that he told the officials of the company that the chart was copyrighted. He is much more likely in our opinion to remember that he did so than they would be to recall the fact that he did so inform them, and we believe his testimony. But, even if he failed actually to impart that information to the company, it would not be decisive of the case. We may grant for the sake of the argument that he made no disclosure. The fact would nevertheless remain that while he was employed by the defendant, and while in the prosecution of the work for which he was employed, he acquired knowledge of the chart and of its having been copyrighted by the plaintiff. And, as he acquired that knowledge in a matter within the line of his agency while he was an employee, it certainly became his duty to make the disclosure to the defendant his employer.

Whether he made the disclosure or not, his knowledge must be imputed to the defendant; for there can be no doubt that it is fundamental and well-established law, which needs no citation of the authorities to support it, that knowledge of facts acquired by an agent in the course of his employment and in relation to matters within the scope of his agency, is notice to his principal, whether he communicates such knowledge or not. We see no reason why that principle is not applicable to the facts of this case. It may not have finally rested with Adams to determine what should be or should not be printed. But it was his duty to prepare the advertising matter and submit it, and if he submitted with it the chart in question, knowing that it was copyrighted, and that the fact of its being copyrighted did not appear upon its face, it was very clearly his duty to communicate that information respecting the subject-matter upon which the defendant had employed him. And, whether or not he made the disclosure, his knowledge of the existence of the copyright must be imputed to the defendant.

In view of the conclusion we have reached, we find it unnecessary to discuss the other matters argued upon the appeal.

Decree affirmed.